IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GSE ENVIRONMENTAL, INC., *et al.*, | Chapter 11 |
| Debtors. | Bankr. Case No. 14-11126 (MFW) |
| CHARLES A. SORRENTINO, | Adv. No. 16-50377 (MFW) |
| Appellant, | |
| v. | Civ. No. 16-616 (LPS) |
| GSE ENVIRONMENTAL, INC., *et al.*, | |
| Appellees. | |

## MEMORANDUM

Pending before the Court is appellant Charles A. Sorrentino's appeal (D.I. 1) from the Bankruptcy Court's decision, *GSE Envtl., Inc. v. Sorrentino (In re GSE Envtl., Inc.)*, 2016 WL 3963978 (Bankr. D. Del. July 18, 2016) ("Order"), which granted appellees' Motion for Judgment on the Pleadings (Adv. D.I. 12, 13)[1] with respect to appellees' First Amended Complaint (Adv. D.I. 6), which had sought declaratory relief in the form of, *inter alia*, a determination that the claim filed by appellant constitutes an equity security. For the reasons that follow, the Court will affirm the Order.

### I. BACKGROUND

On May 4, 2014 ("Petition Date"), appellees GSE Holding, Inc. ("GSE Holding") and GSE Environmental, Inc., together with certain affiliates ("Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[1] The docket of the adversary proceeding, captioned *GSE Envtl., Inc. v. Sorrentino*, Adv. No. 16-50377 (MFW) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The docket of the chapter 11 cases, captioned *In re GSE Envtl., Inc.,* Case No. 14-11126 (MFW) (Bankr. D. Del.), is cited herein as "B.D.I. __."

Prior to the Petition Date, appellant and GSE Holding entered into a letter agreement dated July 1, 2013 (the "Initial Employment Agreement"). Pursuant to the Initial Employment Agreement, appellant served as Interim President and Chief Executive Officer, and his compensation was $186,000 per month in cash. Appellant received his salary of $186,000 per month in cash for the period of July 1, 2013 to August 8, 2013. By letter agreement dated August 8, 2013, appellant and GSE Holding amended the Initial Employment Agreement (the "Amended Employment Agreement").[2] The Amended Employment Agreement divided appellant's monthly compensation into two parts, $100,000 in cash and $86,000 in stock, as follows:

> Commencing on the date hereof, your monthly base salary of $186,000 (the "Base Salary"), which shall be prorated for any partial months, will be payable in a combination of cash and Company stock as follows:
>
> (i) One Hundred Thousand Dollars ($100,000) of the monthly Base Salary shall be paid in cash to you in accordance with the Company's normal payroll practices; and
>
> (ii) Eighty Six Thousand Dollars [($86,000)] of the monthly Base Salary shall be paid to you in the form of Company stock which shall be granted to you from the Company's 2011 Omnibus Incentive Compensation Plan ... on the date that is the later of (i) seven (7) days after the start date of a replacement CEO, and (ii) February 13, 2014 (the "Grant Date").

Accordingly, from August 8, 2013 to November 5, 2013, appellant's base monthly compensation was payable in the form of cash ($100,000) and stock ($86,000). Appellant was paid all of his cash compensation under the Amended Employment Agreement. Appellant, however, did not

---

[2] Appellant and GSE Holding further amended the Amended Employment Agreement by letter agreement dated November 4, 2013 (the "Second Amended Employment Agreement"). Pursuant to the Second Amended Employment Agreement, Sorrentino became permanent President and Chief Executive Officer. In addition, Sorrentino's compensation was reduced to $625,000 per annum, payable in cash. The Second Amended Employment Agreement has no relevance to the issues on appeal.

2

receive the $86,000 per month in stock owed to him under the Amended Employment Agreement. Therefore, following the Petition Date, appellant filed a proof of claim (as amended, "Alleged Claim") in the amount of $260,866.67, which equals three months plus one day at the rate of $86,000 per month. Of that amount, the Alleged Claim asserts $12,475.00 as a priority unsecured claim, earned within 180 days of cessation of employment, and $248,391.67 as a general unsecured claim. (*See* D.I. 10 at APP35)[3]

### B. Plan of Reorganization

On July 25, 2014, the Bankruptcy Court entered an order (B.D.I. 340) ("Confirmation Order") confirming the Debtors' plan of reorganization (B.D.I. 316) ("Plan"). The Plan classified "Parent Equity Interests" in Class 9. "Parent Equity Interests" are defined in the Plan as "Interests in GSE Holding." (*See* Plan at Art. I.A.84) The term "Interests" is defined in the Plan, in relevant part, as any "Equity Security, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto."[4] (*See id.* at Art. I.A.71) The Plan provides that, "[o]n the Effective Date, the Parent Equity Interests shall be deemed cancelled and extinguished, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution to holders of Parent Equity Interests on account of such Parent Equity Interests." (*See id.* at Art. III.B.9.b) Thus, holders of Parent Equity Interests will receive no distribution

---

[3] The Alleged Claim also asserted a claim for unreimbursed expenses incurred by appellant on behalf of the Debtors in the amount of $10,670.13 as a general unsecured claim. (*See* D.I. 10 at APP 35-36) That portion of the Alleged Claim has been paid to appellant and is irrelevant to this appeal. (*See* D.I. 11 at 4 n.4)

[4] "Equity Security" is defined in the Plan as an "equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor." (*See* D.I. 10 at APP49, Plan at Art I.A.44)

3

under the Plan on account of such Parent Equity Interests.

The Plan classified "Section 510(b) Claims" in Class 6. Section 510(b) Claims are defined in the Plan, in relevant part, as any claim against the Debtors "arising from rescission of a purchase or sale of a Security of any of the Debtors . . . [or] for damages arising from the purchase or sale of such a security."[5] (*See id.* at Art. I.A.107) The Plan provided that, "[o]n the Effective Date, all Claims in Class 6 shall be cancelled without any distribution." (*See id.* at Art. III.B.6.b) Thus, holders of Section 510(b) Claims also will receive no distribution under the Plan on account of such Section 510(b) Claims.

### C. Adversary Proceeding

Per the First Amended Complaint filed on March 25, 2016, Debtors sought declaratory relief that (i) appellant actually holds an equity interest, rather than a claim, and (ii) that if appellant holds a claim, it is a subordinated Class 6 "Section 510(b) Claim" under the Plan. (*See* D.I. 10 at APP1-11) On May 10, 2016, appellant filed his answer, maintaining that he held a Class 5 "General Unsecured Claim" under the Plan. (*See id.* at APP95) Unlike Class 9 Parent Equity Interests and Class 6 Section 510(b) Claims, which are cancelled without receiving a distribution, Class 5 General Unsecured Claims are paid in full under the Plan.

On May 25, 2016, Debtors filed their Motion for Judgment on the Pleadings and brief in support thereof. (*Id.* at APP96-116) On June 8, 2016, appellant filed his answering brief in opposition thereto. (*Id.* at APP117-26) Appellant disputed what he referred to as a "conclusory" assertion that he "held an equity interest not a claim merely because the $86,000 unpaid portion of [appellant]'s monthly compensation was payable in stock." (*Id.* at APP122) "This conclusion

---

[5] "Security" is defined in the Plan as "a security as defined in section 2(a)(1) of the Securities Act." (*See* Plan at Art. I.A.110)

4

is incorrect because [appellant]'s claim is for a specific dollar amount that was owed to him by the Debtor rather than an arbitrary amount based on a specific number of shares that he did not receive." (*Id.*) Appellant distinguished the cases cited by Debtors on the basis that, in those cases, claimants held a claim for shares in a specific number as opposed to amount. (*See id.* at APP122-23) On June 15, 2016, Debtors filed their reply brief. (*Id.* at APP127-39) On June 20, 2016, appellant filed a motion for leave to file surreply brief (*id.* at APP140-48) ("Motion for Leave"). Debtors filed a response to the Motion for Leave (*id.* at APP149-53), along with a notice of completion of briefing (*id.* at APP154-55). The docket of the adversary proceeding reflects no ruling on the Motion for Leave.

On July 18, 2016, the Bankruptcy Court entered the Order granting Debtors' Motion for Judgment on the Pleadings. *See GSE Envtl.*, 2016 WL 3963978 at *2. The Bankruptcy Court granted Debtors' first request for declaratory judgment, holding that appellant's "stock-based compensation fits squarely within the Code's definition of equity security" and that the unpaid amount thereof "constitutes an equity security" – not a claim. *Id.* at *2. In reaching this conclusion, the Bankruptcy Court rejected appellant's argument that the value of company stock owed to him constitutes a claim, rather than an interest in an equity security, because the stock component of his compensation was calculated as a fixed dollar amount rather than as a fixed number of shares. *See id.* The Bankruptcy Court stated, "the fact remains that the agreement entitled [appellant] only to company stock, not cash." (*Id.*) Because the Bankruptcy Court concluded that appellant did not hold a claim, the Bankruptcy Court did not reach the second question of whether the Alleged Claim must be treated as a Class 6 "Section 510(b) Claim" under the Plan. *See id.*

On July 19, 2016, appellant filed a timely notice of appeal. (D.I. 1) On September 19,

5

2016, appellant filed his opening brief. (D.I. 9, 10) On October 19, 2016, Debtors filed their answering brief. (D.I. 11) Appellant subsequently filed a notice with the Court waiving his right to file a reply brief. (*See* D.I. 13) The appeal is therefore fully briefed.[6]

## II. PARTIES' CONTENTIONS

On appeal, appellant argues that, in reaching its determination that appellant held an equity interest as opposed to a claim, and granting Debtors' first request for declaratory judgment, the Bankruptcy Court failed to consider the totality of the circumstances – specifically, the terms of appellant's bargain under the Amended Employment Agreement. (*See* D.I. 9 at 5) Appellant argues that "he did not have any of the potential benefits of stock-based compensation because he had a fixed dollar recovery which could not have fluctuated with the value of the shares" and, thus, he should not be held to the risks of equity ownership. (*See id.*)

Debtors respond that the Court is required to enforce the plain language of the statute, and as a matter of law the Bankruptcy Court correctly determined that appellant is not a creditor with a "claim" or a "right to payment." (*See* D.I. 11 at 8-11) Debtors argue that appellant has only the right to the issuance of company stock under the Amended Employment Agreement, and such a right constitutes an "equity security" – not a "claim" – pursuant to section 101(16) the Bankruptcy Code. (*See id.*)

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). On appeal, the standard of review for a motion for judgment on the pleadings under

---

[6] On November 7, 2017, appellees filed a notice of supplemental authority, which the Court has considered. (*See* D.I. 14) (citing *In re Lehman Brothers Holdings, Inc.*, 855 F.3d 459 (2d Cir. 2017)

6

Rule 12(c) is plenary. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (internal quotation marks and citation omitted). In considering a motion for judgment on the pleadings, a court is required to "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368 at 690 (1969) (footnotes omitted)).

## IV. DISCUSSION

"[I]nterests in 'equity securities' pursuant to Section 101(16) of the Bankruptcy Code ... are not 'claims' pursuant to Section 101(5) of the Code." *In re Lehman Brothers Holdings Inc.*, 548 B.R. 663, 671-72 (S.D.N.Y. 2016) (hereinafter "*LBHI II*"). The Bankruptcy Code defines a "claim" as a "right *to payment*" or "equitable remedy." 11 U.S.C. § 101(5)(A)-(B) (emphasis added). An "equity security"– a specific type of interest – is defined in the Bankruptcy Code to mean either: (i) a "share in a corporation, whether or not transferable or denominated 'stock', or similar security" (11 U.S.C. § 101(16)(A)); or (ii) a "warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph" (11 U.S.C. § 101(16)(C)). *See LBHI II*, 548 B.R. at 672. "The important difference between a claim and an equity security interest is that the latter is not a claim against the debtor for which its holder may assert a right to payment by filing a proof of claim." *Id.* (internal quotation marks and citations omitted); *see also generally Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 258 (2d Cir. 2006) ("When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one

7

pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion.") (internal quotation marks omitted).

Appellant's brief does not address any of these relevant provisions of the Bankruptcy Code. Rather, appellant urges the Court to consider the "totality of the circumstances" in determining that the Bankruptcy Court erred in determining that the Alleged Claim constitutes an equity interest. (*See* D.I. 9 at 5)

Determination of whether appellant holds a claim or equity interest with respect to the unpaid stock-based portion of his compensation turns on the plain language of the Bankruptcy Code. "It is well established that when a statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. Trustee*, 540 U.S. 526, 534 (2004) (internal citations and quotations marks omitted). Here, the Bankruptcy Court determined that, under the plain language of the statute, the term "equity security" encompasses "warrants or rights . . . to purchase, sell . . . a share, security, or interest" in a corporation. *See GSE Envtl.*, 2016 WL 3963978, at *2 (quoting 11 U.S.C. § 101(16)(A), (C)). Citing relevant case law, the Bankruptcy Court noted that "[c]ommon stock received in exchange for labor constitutes a purchase and sale of a security under the Code." *See id.* (citing *Frankum v. Int'l Wireless Commc'ns Holdings, Inc., (In re Int'l Wireless Commc'ns Holdings, Inc.)*, 279 B.R. 463, 467 (D. Del. 2002) ("That Appellants received the Debtors' stock as part of a compensation package does not preclude the transfer from being characterized as a purchase/sale of the Debtors' stock."), and *In re Touch America Holdings, Inc.*, 381 B.R. 95, 104 (Bankr. D. Del. 2008) (noting that "[s]tock given to an employee as compensation nonetheless involves a bargain and exchange of value") (internal quotation marks omitted)). Based on the foregoing, the Bankruptcy Court concluded that

appellant holds an interest in an equity security and that "[a]n entity asserting an equity interest is not a creditor and does not have a 'claim' under the [Bankruptcy] Code." *Id.* (citing *In re Lehman Brothers Holdings Inc.*, 519 B.R. 47, 66 (Bankr. S.D.N.Y. 2014) (hereinafter "*LBHI I*")).

The Court agrees with the Bankruptcy Court. The Bankruptcy Court's decision to grant Debtors' first request for declaratory relief was based on the plain language of the statute and the plain language of the Amended Employment Agreement. It is further consistent with the "totality of the circumstances" – which establish that appellant agreed to receive a portion of his salary in the form of stock, and not as cash[7] – and is supported by cases holding that, where an employee or former employee asserts a right to issuance of stock in exchange for services, the employee asserts an "equity security" interest, not a claim. *See e.g., LBHI I*, 519 B.R. at 65-66 ("Claimants assert an interest based on equity securities, and, accordingly do not assert a 'claim' at all under the Bankruptcy Code"); *In re MF Global Holdings, Ltd.*, 2014 WL 3882363, at *5 (Bankr. S.D.N.Y. Aug. 6, 2014) (former employee "is asserting an interest based on an 'equity security' and is therefore not asserting a claim at all").

Appellant has the right to issuance of GSE Holding stock in exchange for the services he provided. Under the plain language of section 101(16)(A) and (C), appellant has a "right" to

---

[7] The Court disagrees with appellant that the Bankruptcy Court's determination – which the Court is affirming – leaves him with all the risks attendant to holding an equity interest but with none of the potential upside. Had the equity share price increased after its issuance to appellant, he would have enjoyed the same increase in value as any other equity holder. Moreover, to the extent the share price declined prior to issuance of shares to appellant, his fixed entitlement to $86,000 worth of equities meant that the number of shares he would receive would increase, thereby increasing the potential upside gains should the share price have later increased. These realities are not dispositive – as the fact remains, in any event, that appellant expressly agreed to be compensated in the form of an equity interest, regardless of whether this turned out to be more or less valuable to him – but they are part of the "totality of circumstances" appellant urges the Court to consider.

9

receive "share[s], securit[ies], or interest[s]", which constitute equity interests. Appellant negotiated to receive a portion of his compensation in the form of GSE Holding stock, and therefore negotiated to become an equity holder, even if his intention may have been to convert his shares to cash immediately upon receipt, as asserted in his briefs.

That appellant bargained to receive a portion of his compensation in equity of a certain value, as opposed to equity in a specific number of shares, may have been an uncommon bargain between an employer and employee, but it does not transform appellant from an equity holder to a creditor. Section 101(16) includes no such distinction, and appellant cites no case holding that the right to issuance of company stock in a fixed dollar amount, as opposed to a specific number of shares, must be elevated to a right to payment.

Further, as Debtors correctly observe, the illogic of appellant's position is demonstrated by considering what would have happened if the stock was issued to appellant just prior to the Petition Date: "As an equity interest holder, Appellant would have received nothing under the Plan. Appellant, however, seeks to elevate his status to that of a creditor because the Parent Equity Interests were never issued. It makes little sense for Appellant's position to improve simply because the Debtor did not issue the Parent Equity Interests for which Appellant bargained." (*Id.* at 19-20)[8]

The Court finds no error in the Bankruptcy Court's conclusion.[9]

---

[8] Given the Court's agreement with the Bankruptcy Court that appellant's interest is an equity interest, and therefore cannot be the basis for a claim, the Court will not – as the Bankruptcy Court also did not – proceed to determine what classification would have been given to appellant's claim had it been a claim.

[9] Appellant included the following additional issue for appeal: "Did the Bankruptcy Court err by finding the Plaintiff's Motion for Judgment on the Pleadings ripe for adjudication before ruling on the Defendant's Motion for Leave to File Surreply Brief?" (*See* D.I. 9 at 1) Appellant has waived that issue by failing to address it in his opening brief, so the Court need not address it.

## V. CONCLUSION

For the foregoing reasons, the Court will affirm the Order. An appropriate Order follows.

November 15, 2017
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

See *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

11